Max J. KUNEY, Jr., and Constance F. Kuney, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 72–2622.

United States Court of Appeals, Ninth Circuit.

Oct. 2, 1975.

Gary C. Randall (argued), of Lukins, Myers, Annis, Seelye, Bastine & Randall, Spokane, Wash., for plaintiffs-appellants.

Murray S. Horwitz, Atty., Dept. of Justice (argued), Washington, D. C., for defendant-appellee.

OPINION

Before LUMBARD,* MERRILL and WRIGHT, Circuit Judges.

MERRILL, Circuit Judge:

This is the third occasion on which we have considered the Kuney family partnership, the trusts created of partnership interests [1] and the tax consequences of the manner in which a division of income has thus been accomplished.

Section 704(e)(1) of the Internal Revenue Code of 1954, 26 U.S.C. § 704(e)(1), dealing with family partnerships, recognizes that a partnership interest can, for tax purposes, be created by gift.

"*Recognition of interest created by purchase or gift.*—A person shall be

---

* Honorable J. Edward Lumbard, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

1. The partnership interests are, in essence, divided in fourths between Kuney, Sr.; Kuney, Jr.; trust for child of Kuney, Sr. (with Kuney, Jr., as trustee); trust for children of Kuney, Jr. (with Kuney, Sr., as trustee).

recognized as a partner for purposes of this subtitle if he owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person."

However, 26 C.F.R. § 1.704–1(e)(1)(iii) states a familiar caveat. In part it provides:

"A transfer is not recognized if the transferor retains such incidents of ownership that the transferee has not acquired full and complete ownership of the partnership interest."

With reference to family partnership interests held in trust, 26 C.F.R. § 1.704–1(e)(2)(vii) provides in part:

"A trustee may be recognized as a partner for income tax purposes under the principles relating to family partnerships generally as applied to the particular facts of the trust-partnership arrangement. A trustee who is unrelated to and independent of the grantor, and who participates as a partner and receives distribution of the income distributable to the trust, will ordinarily be recognized as the legal owner of the partnership interest which he holds in trust unless the grantor has retained control inconsistent with such ownership. However, if the grantor is the trustee, or if the trustee is amenable to the will of the grantor, the provisions of the trust instrument (particularly as to whether the trustee is subject to the responsibilities of a fiduciary), the provisions of the partnership agreement, and the conduct of the parties must all be taken into account in determining whether the trustee in a fiduciary capacity has become the real owner of the partnership interest. Where the grantor (or the person amenable to his will) is the trustee, the trust may be recognized as a partner only if the grantor (or such other person) in his participation in the affairs of the partnership actively represents and protects the interests of the beneficiaries in accordance with the obligations of a fiduciary and does not subordinate such interests to the interests of the grantor."

In *Kuney v. Frank*, 308 F.2d 719 (9th Cir. 1962), when the family partnership was first before us, we held that under the facts as recited as to the taxable years in question there was retention by the trustors of such incidents of ownership of the substance of the transfer as to preclude recognition of the transfer for income tax purposes.

In *Kuney v. United States*, 448 F.2d 22 (9th Cir. 1971), the family partnership was last before us (on this occasion as to taxable years 1958 through 1963, and with only one trust involved—that with Kuney, Jr., as trustor, and Kuney, Sr., as trustee). We noted that the district court had not examined into the manner in which the trustee had acted with respect to the interests of the beneficiaries but instead had relied on the fact that the trust instrument remained unchanged, reasoning from that fact that the question of ownership remained unchanged and required the *Kuney v. Frank* result. We noted that what was remarkable about the trust instrument was not that a broad scope of powers was retained by the trustor, but that the powers granted to the trustee were extraordinarily broad. We noted that under these circumstances, if retention of incidents of ownership by the trustor is to be found, it is not through the terms of the trust instrument but must be through his influence over the trustee; that under the regulations familial relationship and amenability of the trustee to the wishes of the trustor present a potential of ownership retention but the question "whether the trustee in a fiduciary capacity has become the real owner of the partnership interest" is made to depend on the manner in which the trustee actually conducts himself with reference to the trust.[2] In this respect we

---

2. Even where the trustor names himself as trustee and could quite rationally be regarded as in "control" of himself, this is not *per se* an undue retention of incidents of ownership.

noted that "it is apparent that many of the practices of which we had been critical [in *Kuney v. Frank*] ceased during the taxable years here in question." 488 F.2d at 24. We stated:

"The question, under the regulations * * * is 'whether the trustee in a fiduciary capacity has become the real owner of the partnership interest.' And this will depend on whether he 'actively represents and protects the interests of the beneficiaries in accordance with the obligations of a fiduciary and does not subordinate such interests to the interests of the grantor.'"

(448 F.2d at 24). We remanded in order that consideration might be given to the manner in which the trustee had conducted himself with reference to the trusts.

Hearing on the remand followed, after which the district court, in a memorandum decision, recited that the United States had pointed to two practices of the Kuneys, Junior and Senior, that it contended were not in accordance with the obligations of a fiduciary and operated to subordinate the interests of the beneficiaries to those of the grantor.[3] The district court agreed with the United States, rendering judgment in its favor, and this appeal was taken by the taxpayers.

The first of the two practices on which the United States relied related to the fact that the Kuneys had, as partners, drawn compensation fixed at $5,000 each and that by agreement with the partnership it was provided that the compensation should be taken, so far as possible, from partnership capital gains. The United States argues that this con-

stituted a tax benefit to the trustors that otherwise would have been enjoyed by the trust partners.

However, the Kuneys as managing partners were required by regulation to pay themselves suitable compensation for their services in the management of the partnership affairs. 26 C.F.R. §§ 1.704–1(e)(1)(i), 1.704–1(e)(3)(i)(a). Had they failed to do so the Service could have added to their taxable income such amount as it felt was appropriate. The fact that capital gain income is involved does not alter this principle, nor can it change the general inquiry as to the trustees' conduct. Capital gains, in the hands of the trustors, may well have been put to their maximum usefulness as tax benefits, and the tax recovered by the United States may have been reduced by this manner of making payment, but the question is whether the trusts (not the United States) suffered by the arrangement. We fail to see how the trusts could be said to have suffered unless the value of the benefit conferred was such as to constitute undue compensation.

There is nothing in the record to which we have been cited to establish that the extent of benefit conferred on the trustors or detriment suffered by the partnership as a result of this arrangement amounted to undue compensation. To the contrary, the salary payments made by the partnership to the Kuneys appear reasonable in light of the large amount of capital gain and rental income accruing to the partnership as a result of the Kuneys' services.[4] In fact, the $5,000 salary taken by each Kuney represents a substantial decrease from the $25,000 salary paid to each Kuney by the partnership in the years prior to the

---

Here, too, under the regulations the fact of retention of ownership will depend on how the trustor behaves himself as trustee. The regulations recognize that a trustor in such a situation may be able, in his capacity as trustee, to refrain from subordinating the interests of his beneficiary to his own interests as trustor.

**3.** The United States cited a third practice of which it was critical as to which it now concedes that criticism was not justified.

**4.** For example, the capital gains achieved solely through the Kuneys' efforts in the years 1958–60 were respectively $36,557.88, $72,740.00, and $45,054.47. The rental income, while fixed by contract and thus less subject to the Kuneys' supervision, was also high: a total of $316,196.72 in 1959 and $245,591.82 in 1960.

capital gain arrangement.[5] Of course, the payment of $5,000 in capital gains affords a greater benefit to the trustors and a greater detriment to the trusts than the payment of a similar amount in ordinary income. But this fact alone cannot constitute compensation as undue. If capital gain payments were precluded, the trusts might well have had to pay the Kuneys larger salaries in order to afford them reasonable compensation at ordinary income tax rates.

We conclude that the trust cannot be said to have suffered by reason of the capital gain arrangement where the value of the benefits conferred has not been shown to constitute undue compensation.

■ The second of the two practices of which the United States complains has to do with the rental charged by the partnership for equipment owned by it and leased to a family corporation controlled by the Kuneys, Senior and Junior, in which corporation the trusts had no interest. The United States criticizes the fact that rental at one point was reduced, and also criticizes the fact that the rental rate was 100% of the depreciation deduction allowed the partnership plus interest on the adjusted basis at bank rates. The United States points out that in time this would result in the corporation paying almost nothing for an item of equipment which had been fully depreciated. (The United States concedes that since the partnership used accelerated depreciation schedules the rental rate would be very high in the first year of the life of any item.)

There is nothing in the record to which we have been referred to establish that the rental calculated in this fashion was unduly low or that the manner of computing it was, on the whole, disadvantageous to the partnership.[6] There seems to be nothing inherently wrong in gearing rental rates to depreciation deductions, see Riss & Co., Inc., ¶ 64,190 P–H Memo TC (1964), especially where, as here, the lessee also undertakes to pay all ownership costs (including repairs, maintenance, insurance, and property taxes) and the lessor is able to reap large capital gains on the sale of the depreciated assets.[7] Moreover, the fact that the rental had been reduced in 1959 does not inevitably lead to the conclusion that the rental was too low or that the trustees were subordinating the interests of the trusts to their own benefit. The reason for the reduction was that the 20% minority shareholders of the lessee corporation felt that the prior rental figure of 130% depreciation was too high. While the reduction in rental certainly resulted in less income to the partnership from the previous arrangement, the resulting rental rate was not, as we have seen, unduly low. Nor does the fact of a reduction inherently establish that the trustees were acting in their own, and not the trusts' interests. Section 704(e) was not meant to tie the trustees to

**5.** This decrease was substantially offset by the salary allotted each Kuney by the corporation in which the Kuneys held a controlling interest. However, the record shows that, at least for most of the years in question, the total amount of compensation taken by each Kuney (from both the partnership and the corporation) was less than the $25,000 salary paid to each under the original arrangement with the partnership.

**6.** At the hearing on remand counsel for the United States appeared to concede that pegging rental to depreciation would result in a higher rental figure than otherwise might be expected.

Throughout these proceedings the United States has asserted the generalization that the Kuneys have sought to minimize the income of the partnership (and thus reduce their individual taxable income) and maximize the value of their corporate holdings. We are cited to nothing in the record to support this generalization. To the contrary, testimony of Kuney, Jr., given at trial, was to the effect that "By the end of 1963, the last year at issue in this case, the original trust investment of $200,000 had multiplied by three hundred and twenty-one per cent where the corporate investment of $500,000 had increased by forty-four per cent."

**7.** Section 1245 of the Internal Revenue Code, enacted to curb precisely this sort of practice, was not in effect until after December 31, 1962, and thus was inapplicable to most of the years in question.

inflexible or rigid positions in the face of changing business needs, and the trustees could well independently conclude that in this situation a reduction of rental was in the best business interests of the partnership.

We conclude that the trusts cannot be said to have suffered by reason of the rental charged or the manner of calculating it.

Based on these practices cited by the United States, the district court concluded that the trustee had acted in derogation of the interests of the beneficiaries, subordinating their interests to those of the trustor, and concluded that the income received by the trust should be taxed to the trustor as his income.

In this we feel the court was in error. Reversed.